[Cite as *Kimmel v. Kimmel*, 2012-Ohio-3306.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

NICHOLAS G. KIMMEL,

    PLAINTIFF-APPELLANT,           CASE NO.  16-11-11

    v.

ALISHA K. KIMMEL,                O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Wyandot County Common Pleas Court
Domestic Relations Division
Trial Court No. 09-DR-0120

Judgment Affirmed

Date of Decision:  July 23, 2012


APPEARANCES:

    *Kevin P. Collins*  for Appellant

    *James M. Ruhlen*  for Appellee

**SHAW, P.J.**

{¶1} Plaintiff-appellant Nicholas G. Kimmel ("Nick") appeals the October 10, 2011 judgment of the Wyandot County Court of Common Pleas dividing the marital estate and designating defendant-appellee Alisha K. Kimmel ("Alisha") residential parent of the parties' three children.

{¶2} Nick and Alisha were married July 20, 1996. Three children were born during the marriage: Julie, born August, 1997, Travis born February, 2000, and Bryce born November, 2003. Throughout the marriage Nick worked primarily as a mechanic and Alisha was primarily a stay-at-home mom. Alisha occasionally did some sewing work out of the home and eventually started working part-time as a waitress at Jac-N-Do's pizza.

{¶3} Nick and Alisha separated in October or November of 2009 and Nick filed for divorce on grounds of incompatibility on November 19, 2009. Alisha filed her answer and counterclaim for divorce December 8, 2009.

{¶4} On December 9, 2009, temporary orders were issued designating Nick as residential parent of the parties' three children. On December 13, 2010, Alisha was granted residential parent status of the parties' three children.[1]

---

[1] Throughout the proceedings there were instances of domestic violence between Nick and Alisha. Alisha was convicted of domestic violence from one incident. Nick and Alisha were both charged with domestic violence from another incident. Nick pled no contest to those charges. Nick filed for multiple civil protection orders against Alisha. Later, Nick was investigated by Job and Family Services for allegations of physical child abuse. It was after these allegations that residential parent status was changed to Alisha.

{¶5} On March 29, 2010, the Magistrate conducted an *in camera* interview of the parties' children. The Magistrate found that the children had sufficient reasoning ability to express their wishes and concerns. On June 21, 2010, the Magistrate conducted a second interview with the parties' children wherein the children expressed their desire to reside with their mother.

{¶6} On July 6, 2010, the divorce action was stayed due to the parties filing for bankruptcy. On January 6, 2011, upon completion of the bankruptcy proceedings, the case was reactivated.

{¶7} On March 8-9, 2011, the final divorce hearing was held before the Magistrate.

{¶8} On April 28, 2011, the Magistrate filed her decision. As part of the Magistrate's 37-page decision, Nick was awarded assets valued at $51,464 and Alisha was awarded assets valued at $13,078. In order to make the distribution equal, the Magistrate ordered Nick to pay $19,193 to Alisha. A portion of that money would come from the sale of several of the parties' vehicles at auction.[2]

{¶9} The April 28, 2011 Magistrate's decision also designated Alisha as residential parent of the parties' three children. Nick was given parenting time in accordance with the local rules.

---

[2] As Nick was a mechanic, the parties had several vehicles that were not used as primary transportation.

**{¶10}** On May 10, 2011, Nick filed his preliminary objections to the Magistrate's decision challenging factual and legal findings of the Magistrate. On August 9, 2011, Nick filed supplemental objections to the Magistrate's decision. On August 26, 2011, Alisha filed a response to Nick's objections.

**{¶11}** On October 3, 2011, the trial court entered a 20-page Judgment Entry finding that "while some objections [to the Magistrate's decision] were sustained, they were collectively too insignificant to cause this Court to do anything but adopt the decision of the Magistrate." (Doc. No. 168). The Magistrate's decision was then adopted and made the order of the court.

**{¶12}** On October 10, 2011, the trial court entered a Judgment Entry titled "Decree of Divorce" specifically enumerating the terms already established in the Magistrate's decision and the trial court's October 3, 2011 Judgment Entry. It is from this judgment that Nick appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DIVIDING THE MARITAL ESTATE INEQUITABLY AND UNEQUALLY.**

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED IN DESIGNATING ALISHA TO BE THE CHILDREN'S RESIDENTIAL PARENT.**

*First Assignment of Error*

**{¶13}** In his first assignment or error, Nick argues that the trial court inequitably divided the marital estate. Specifically, Nick argues that the trial court's valuation of the marital residence was improper, that the trial court's valuations of four of the parties' vehicles credited to Nick were improper, that the trial court improperly credited Nick with all of the 401(k) funds, and that the trial court failed to recognize that Nick incurred debt when he redeemed a recreational "camper" from the bank after it had been repossessed.

**{¶14}** It is well-settled that trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding. The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion." *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson v. Jackson*, 3d Dist. No. 11-07-11, 2008-Ohio-1482, ¶ 15, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131 (1989). An abuse of discretion is more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion

standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id*

**Marital Residence**

{¶15} Nick first argues that the court erred in valuing the marital residence at $94,340. Nick claims on appeal that the appropriate valuation of the marital residence was $68,000, the amount that Nick claims he reaffirmed on the debt of the residence after the parties went through bankruptcy.

{¶16} When the parties separated, Nick maintained the marital residence and Alisha moved out. Alisha stated that she did not want the residence and had no idea how much it was worth. (Tr. Vol. II at 336). When the parties went through bankruptcy proceedings the marital residence was valued at $94,340. (Def.'s Ex. A). At the final divorce hearing, in testimony that the trial court described in its review of the objections to the Magistrate's decision as a "confusing mess," Nick claimed that he felt the marital residence was worth $50,000. (Doc. No 168); (Tr. Vol. I at 155). The Magistrate reasoned that it defied common sense for Nick to reaffirm a debt of $68,000 on a residence worth $50,000. (Doc. No. 141). Finding Nick's testimony not to be credible, the Magistrate used the value on the parties' bankruptcy petition, $94,340, as the value of the marital residence.

{¶17} Despite Nick's claim on appeal that the marital residence should be valued at $68,000, Nick produced no documentation showing the value of the marital residence to be $68,000. Nick also did not produce any documentation establishing any amount that he reaffirmed on the debt of the marital residence, or that he even reaffirmed the debt at all.[3] The trial court stated that Nick's "argument that the property be valued at the amount he was willing to pay his grandmother is not a credible basis for using this valuation. This would not be considered an arms length [sic] transaction." (Doc. No. 168). Under these circumstances, we find that the bankruptcy petition provided competent credible evidence to support the valuation of the residence and that Nick's argument for a different, unsupported valuation of the marital residence is without merit. Therefore we cannot find an abuse of discretion.

**Vehicles**

{¶18} Nick next argues that the trial court erred in its valuations of several of the vehicles that were owned by the parties. The cars at issue are a 1996 Pontiac GM, valued in the bankruptcy petition, by the Magistrate, and subsequently the trial court, at $2,000, a 2001 Ford Escort valued at $2,000, a 2002 Ford Escort valued at $2,000, and a 1995 Mystique valued at $250.[4]

---

[3] The debt owed on the residence was actually to his grandmother.
[4] The descriptions of the make/model of the vehicles are not internally consistent in the same paragraph in Nick's brief. The Ford Escorts are described as a 2001 and a 2002 at the beginning of one paragraph and

{¶19} During the pendency of the divorce, the Magistrate issued a temporary order specifically restricting the parties from selling property without an agreement. (Doc. No. 27). Notwithstanding this order, at trial Nick claimed he sold both of the Ford Escorts for $100 each, sold the 1996 Pontiac GM for $250, and sold the 1995 Mystique for $50. All four vehicles were sold to the same person, Scott Welker, an acquaintance of Nick's. (Tr. Vol. I. at 175, 178). No agreement was reached between the parties to sell the vehicles. Nick now argues on appeal that the vehicles should have been valued at the price that they sold for rather than the price included on the parties' bankruptcy petition, or in the case of the Mystique, the value used in Alisha's brief. Nick now claims that the amounts on the bankruptcy petition were written with the idea that the vehicles were all in repaired condition. Nick claims the vehicles were not in "repaired" condition when sold.

{¶20} The Magistrate found Nick's testimony regarding the value of the vehicles not to be credible and thus primarily used the values in the parties' bankruptcy petition to determine their value. The Magistrate found Nick's testimony regarding the vehicles not credible because "the Mystique is still in [Nick's] possession, and the Escorts are at Nic[k]'s place of employment." (Doc.

---

later described, using the testimony of Nick, as two 2002 Ford Escorts. The 1995 Mystique is described as both a Ford and a Mercury. The 1996 Sable is also described as a 1996 Pontiac GM. (Appt. Br. at 16). The 1995 Mystique was valued at $250 in Alisha's brief.

No. 141). The Magistrate found that this "shadow[ed]" Nick's testimony with doubt as the vehicles were still "accessible to him." (*Id.*) Furthermore, the Magistrate was troubled by Nick's "failure to recall things that would be incriminating, such as when he last used a towing service to move the Escort to his place of employment." (*Id.*) The record supports these findings, in that pictures were taken and identified of the Escorts at Nick's place of business after the purported sale. (Def.'s Exs. E, F, G, H, J); (Tr. Vol. I 176-85). Further, the record also supports the finding that Nick failed to recall when he used a towing service to move the vehicles from his home to his place of employment. (*See* Tr. Vol. II at 20-27).

{¶21} Due to Nick ignoring the court order, the suspicious nature of the sale of the vehicles, and the Magistrate's finding that Nick's testimony was not credible, we do not find an abuse of discretion in using the alternative valuation of the vehicles contained in the record.

**401(k)**

{¶22} Nick next argues that the trial court erred in crediting him with the amount of $5,000 for his 401(k). In response, Alisha argues that Nick never objected to the Magistrate's decision crediting Nick with the 401(K), and, in the alternative, that Nick used the 401(k) funds for personal use.

{¶23} Civil Rule 53(D)(3)(b)(ii) governs the filing of objections to a magistrate's decision and provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Except for a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any finding of fact or legal conclusion, unless that party has objected to that finding or conclusion of the trial court. Civ.R. 53(D)(3)(b)(iv).

{¶24} Throughout some 45 pages of preliminary and supplemental objections, the 401(k) funds were not mentioned a single time. The trial court thus had no cause to address the 401(k) funds in reviewing the Magistrate's decision. Consequently, Nick has waived all but plain error in the trial court's judgment. The plain error doctrine is not favored in civil appeals and "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus.

{¶25} In reviewing the record, we do not find this to be a case of plain error. Nick cashed in the 401(k) prior to the final divorce hearing in violation of court order, and spent large portions of whatever money he obtained on himself

and paying bills, including buying a side of beef (Tr. Vol. I at 134). Furthermore, no documentation was provided as to how much was in the 401(k), or what, if any, taxes were paid. Based upon the foregoing, we do not find plain error regarding the 401(k).

**Camper**

{¶26} In his last argument under this assignment of error, Nick argues that the trial court erred by failing to recognize that Nick incurred $2500 in debt when he redeemed the parties' camper after it had been repossessed. In the final distribution of property, the trial court awarded the camper to Alisha.

{¶27} When the parties originally separated, Alisha took the camper pursuant to temporary orders. Alisha claims she made 15 payments on the camper and that it was nearly paid off, but that it was repossessed when she missed a payment. Nick claims that he obtained a loan from his parents to redeem the camper and paid off the $2058 owed on the camper. However, there is no documentation to support Nick's claims regarding any money Nick purportedly paid for the camper. Furthermore, the amount of the camper's value was credited to Alisha's total assets. Therefore, we find no abuse of discretion failing to recognize any alleged debt undertaken by Nick regarding the camper.

{¶28} Accordingly, Nick's first assignment of error is overruled.

*Second Assignment of Error*

**{¶29}** In his second assignment of error, Nick argues that the trial court improperly designated Alisha as the residential parent of the parties' three children. Specifically, Nick argues that when considering the factors of R.C. 3109.04, it is in the best interests of the children that Nick be designated residential parent. Nick places particular emphasis on the fact that Alisha has been convicted of domestic violence, arguing that the court did not put enough weight on this factor.

**{¶30}** An appellate court reviews a trial court's decision on child custody matters for an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71 (1988); *Erwin v. Erwin*, 3d Dist. No. 14-05-45, 2006-Ohio-2661, ¶ 12; *Swain v. Swain*, 4th Dist. No. 04CA726, 2005-Ohio-65, ¶ 16. Due to the difficult and complicated nature of custody determinations, appellate courts must grant wide latitude to a trial court's consideration of the evidence, and, thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997); *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus.

**{¶31}** In making an allocation of parenting rights, the court must consider the best interests of the children. R.C. 3109.04(B)(1). In order to determine the children's best interests, the trial court is required to consider the factors outlined

in R.C. 3109.04(F)(1), but may consider other additional factors as well. R.C. 3109.04(F)(1). Accordingly, we must examine the record to determine (1) that the trial court considered all of the necessary factors listed in R.C. 3109.04(F)(1) and (2) that there is competent, credible evidence supporting the trial court's conclusion that designating Alisha the residential parent is in the children's best interests.

{¶32} R.C. 3109.04(F)(1) directs the trial court to analyze the following factors when looking to the best interest of the children:

**(a)  The wishes of the child's parents regarding the child's care;**

**(b)  If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d)  The child's adjustment to the child's home, school, and community;**

**(e)  The mental and physical health of all persons involved in the situation;**

**(f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that**

**parent pursuant to a child support order under which that parent is an obligor;**

**(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code * * *; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

{¶33} In the Magistrate's 37-page decision, the Magistrate specifically addressed the factors of R.C. 3109.04(F)(1). In the trial court's 20-page review of Nick's objections to the Magistrate's decision, the trial court stated that "a review of the transcript and Magistrate's Decision reveals that the Magistrate had two,

less than desirable, candidates from which to choose as residential parent." (Doc. No. 168). We will review the factors of R.C. 3109.04(F)(1), detailing briefly how the Magistrate and the trial court addressed each factor and the evidence supporting the judgment.

{¶34} With regard to factor (a), both parties wished to be residential parent, and throughout the proceedings, both parties had been, at one time, designated as residential parent. Nick was residential parent from the inception of the case until December 13, 2010 when Alisha became residential parent in part as a result of an investigation by Job and Family Services of Nick for allegations of physical abuse of the children. (Doc. No. 141). All of this was noted in the Magistrate's decision adopted by the trial court. (*Id.*)

{¶35} With regard to factor (b), the Magistrate conducted two *in camera* interviews of the children. The Magistrate found the children had "sufficient reasoning ability to express[] their wishes [and] concerns." (Doc. No. 141). The children expressed their aversion to Nick's girlfriend and their dissatisfaction for Nick leaving them alone at night. During the second *in camera* interview, the children expressed their desire to live with Alisha. This was relied upon in the trial court's judgment.

{¶36} With regard to factor (c), the Magistrate found that the children had a relationship with each parent and the extended family on both sides. (Doc. No.

141). Nick's mother, Jane Kimmel, testified at the final hearing and appears from the record to have a good relationship with the children and appears to be a good influence on their development.

{¶37} With regard to factor (d), Alisha had moved several times since the separation, but has since settled into a home in the same school district the children were already attending during the marriage. There was testimony at the final hearing regarding a series of tardies and absences from school by the children occurring when they lived with Nick despite Nick only living three miles from the school. (*See* Trans. Vol. I at 216-29).

{¶38} With regard to factor (e), the Magistrate found neither party had mental or physical health issues. (Doc. No. 141). In reviewing the Magistrate's decision the trial court found that Nick did have physical issues with his acid reflux and that both parties may "have mental health type issues, but not of a type that is debilitating." (Doc. No. 168). The record supports those findings in that while Alisha was at one time in counseling, she had completed that counseling, and while Nick was on medication for anxiety and depression, it is not clear from the record that either was debilitating.

{¶39} With regard to factor (f), the Magistrate reasoned that both parties were spending time with the children. That finding is supported in the record in that the parties both regularly saw their children and for a stretch of the

proceedings, they alternated weeks of custody. However, when it comes to the parent more likely to respect court orders, in its Judgment Entry addressing the objections, the trial court noted that Nick "does not respect Court Orders," which was substantiated by Nick selling vehicles in violation of temporary orders and withdrawing his 401(k) in violation of temporary orders.

{¶40} With regard to factor (g), child support was not ordered in this case and therefore neither party was behind in payment.

{¶41} With regard to factor (h), the Magistrate noted that Alisha had been convicted of domestic violence against Nick and Nick had been charged with domestic violence against Alisha. The Magistrate also noted that Nick had been investigated for alleged physical abuse of the children. (Doc. No. 141). The allegation arose out of an incident where Nick purportedly struck Bryce with a peroxide bottle and struck Julie with a belt.[5] (Tr. Vol. I at 28). In reviewing the objections to the Magistrate's decision, the trial court also noted that Alisha had an incident of domestic violence with a recent (post-separation) boyfriend. (Doc. No. 168).

---

[5] In reviewing the objections to the Magistrate's decision, the trial court found that while it was true Nick was investigated for physical abuse of the parties' children, no testimony of that physical abuse being "indicated" was re-introduced at the final hearing. Thus it was appropriate for the Magistrate to rely on the fact that Plaintiff was investigated, but *not* appropriate to consider that the abuse allegations were "indicated." (Doc. No. 168).

**{¶42}** With regard to factor (i), though the trial court and the Magistrate did not explicitly mention it, there was some testimony that Nick and Alisha had each denied the other parenting time or been late dropping off the children.

**{¶43}** With regard to factor (j), neither party indicated a desire to move out of state.

**{¶44}** In looking at other factors outside of those in the statute, there was concern on behalf of Nick of inappropriate pictures that the parties' oldest child, Julie, had posted on Facebook and an inappropriate picture Julie had taken of herself in a bikini and sent to her boyfriend. Nick testified that he grounded Julie for taking the pictures and that Alisha did not honor this despite his wishes. Nick was concerned that Alisha did not appropriately monitor Julie's internet activities. However, Alisha testified that she did not have internet at home, limiting Julie's access, and, further, that Alisha regularly checked on Julie's Facebook page. (Tr. Vol. II. A t 241). Alisha testified that she tells Julie which pictures she does not like and that she tells Julie to delete those pictures. (Tr. Vol. II at 326).

**{¶45}** When reviewing the factors in their totality, it is clear that the Magistrate in making her decision, and the trial court in reviewing the objections, balanced the competing factors. There was clearly positive and negative testimony given regarding each party as the residential parent. In its review of the

objection to the Magistrate's decision naming Alisha residential parent of the

children, the trial court conducted the following analysis:

> **[Alisha] admits to engaging in domestic violence both with [Nick] and a recent boyfriend. [Alisha] did little to address her daughter's unacceptable and perhaps dangerous communications on the internet. [Alisha] had instability in her life following the parties' separation.**
>
> **[Nick] has engaged in domestic violence also. The children had excessive absences and tardies from school while in Plaintiff's exclusive care. The children do not like [Nick]'s girlfriend. [Alisha] does not appear to appreciate the effect domestic violence may be having on her children, nor how bringing men she meets on the internet into her home poses a risk to the children.**
>
> **[Nick] fails to see how his immaturity is detrimental to the children and cast him as a poor role model. ([Nick] had to be told to sit up in Court, was noted to smirk, make faces, refused to answer questions, etc., during the trial of this matter.) [Nick] does not respect Court orders and demonstrates little respect for [Alisha].**
>
> **During the second in-camera interview the children, who were found to possess the ability to articulate their desires, advised they preferred to live with [Alisha]. They did not like [Nick] leaving them alone at night nor did they care for [Nick]'s attitude concerning their relationship with [Nick]'s girlfriend.**
>
> **Perhaps the greatest support for naming [Alisha] as residential parent is in the Magistrate's finding to which there was no objection. "Prior to the parties separating, [Nick] did not interact much with the children. He would come home from work and go to the garage. [Alisha] took care of the children."**
>
> **[Alisha] was the childrens' (sic) primary caregiver. Given all that these children have been through it is amazing that they do**

> **well at school and presented themselves as thoughtful and articulate to the Magistrate. As the father was not that involved in the childrens' (sic) lives prior to the parties' separation, it appears [Alisha] did do something right in raising the children.**

(Doc. No. 168).

**{¶46}** The foregoing discussion makes clear that the trial court seriously considered the positive and negative aspects of designating each party residential parent. As the decision is supported by competent credible evidence in the record as discussed above, we cannot find that the trial court abused its discretion in naming Alisha residential parent of the parties' three children. Accordingly, Nick's second assignment of error is overruled.

**{¶47}** For the foregoing reasons, Nick's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**